**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**


| | | |
|---|---|---|
| **In re:** | § | **Case Number** |
| | § | **14-10346-B-11** |
| **S & M TRANSPORT, LLC,** | § | **(Chapter 11)** |
| **Debtor.** | § | |


**DEBTOR'S COMBINED DISCLOSURE & PLAN**

Eduardo V. Rodriguez
MALAISE LAW FIRM
Texas Bar No. 00795621
Federal Admissions 19945
1265 North Expressway 83
Brownsville, TX 78521
Tel:  (956) 547-9638
Fax:  (956) 547-9630
Email: evr@malaiselawfirm.com
Attorney In Charge for Debtor

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| In re: | § | **Case Number** |
| | § | **14-10346-B-11** |
| **S & M TRANSPORT, LLC,** | § | **(Chapter 11)** |
| **Debtor.** | § | |

### NOTICE OF VOTING AND OBJECTION DEADLINE
### AND NOTICE OF CONFIRMATION HEARING

A copy of a proposed plan, combined with its disclosure statement, is attached.   If you are the holder of a claim that is impaired by the plan, you have the right to vote by the enclosed ballot. **The deadline for receipt of your ballot is February 27, 2015.**   Late ballots will not be counted.

Please read the enclosed plan and disclosure statement in its entirety before you vote.   You may wish to retain your own attorney or accountant to assist you in determining whether to accept or reject the proposed plan. S & M Transport, LLC nor its counsel can give you advice on how to vote.

The plan will not be binding on any person unless the United States Bankruptcy Court enters an order confirming the plan.   There are many requirements for confirmation of a plan. These are contained in § 1129 of the Bankruptcy Code.   One of the requirements is that at least one class of impaired claims votes to accept the plan, by both a two-thirds majority (measured by the dollar amounts of claims that are voted) and a simple majority (measured by the number of persons who vote).   Accordingly, it is important that you return your ballot.   Mailing instructions are contained on the ballot.

You may also file a written objection to confirmation of the plan.   Written objections must be filed with the Clerk of the Bankruptcy Court. **The deadline to file a written objection is February 27, 2015.   A vote rejecting the plan is not the same as an objection to the plan.**

You may also file an objection as to the adequacy of the disclosure statement that is attached.   The disclosure statement is required to contain "adequate information" to allow you to make an informed decision on how to vote on the plan.   If you object to the adequacy of the disclosure statement, you must file a written objection that is received by the Clerk of the Bankruptcy Court not later than **January 28, 2015.**

The deadline for filing proofs of claims against the Debtor is **January 20, 2015** after which any proof of Claim, including Administrative Claims, filed will not be Allowed, and the later filing of which will have no effect on the distributions provided in this Plan or effect the discharge or res judicata effect of any discharge or injunction provided in this Plan.   No informal filing, nor other document shall constitute a Proof of Claim except as provided in this Plan.

A hearing on whether to confirm the proposed plan has been scheduled for 9:00 a.m. **March 4, 2015** at the United States Bankruptcy Court, Reynaldo G. Garza-Filemon B. Vela United States Courthouse, 600 E. Harrison St., Brownsville, TX 78520.   The hearing is open to the public.

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case Number** |
| | § | **14-10346-B-11** |
| **S & M TRANSPORT, LLC,** | § | **(Chapter 11)** |
|     **Debtor.** | § | |

## PLAN
## AND DISCLOSURE STATEMENT

S & M Transport, LLC ("Debtor") files this Disclosure Statement & Plan ("Plan") pursuant to Section 1121 of the Bankruptcy Code.   As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code.   The Plan states whether each class of claims or interests is impaired or unimpaired.   The Plan provides the treatment each class will receive under the Plan.

The Court has not yet confirmed the Plan.   In other words, the terms of the Plan are not yet binding on anyone.  If the Court later confirms the Plan, then the Plan will be binding on the Debtor and on all creditors and interest holders in this case.

The Debtor represents that everything in this document is true to the best of its knowledge. **READ THIS DOCUMENT CAREFULLY IF YOU WANT TO KNOW:**

- Who can vote or object.

- The treatment of your claim is (*i.e.*, what your claim will receive if the plan is confirmed).

- The history of the Debtor and significant events during the bankruptcy.

- How the court will decide whether to confirm the plan.

- The effect of plan confirmation.

- Whether this plan is feasible.

# Table of Contents

I.    Definitions &Rules of Interpretation ................................................................. 10

    1.01.    Rules of Interpretation. ............................................................................. 10

    1.02.    Computation of Time ............................................................................... 10

    1.03.    "Administrative Claim" or "Administrative Expense Claim" ................. 10

    1.04.    "Avoidance Action" ................................................................................. 11

    1.06.    "Bankruptcy Code" .................................................................................. 11

    1.07.    "Bankruptcy Court" or "Court" ............................................................... 11

    1.09.    "Bar Date" ................................................................................................ 11

    1.10.    "Business Day" ......................................................................................... 12

    1.11.    "Cash" ....................................................................................................... 12

    1.12.    "Chapter 11 Case" or "Case" .................................................................. 12

    1.13.    "Claim" ..................................................................................................... 12

    1.14.    "Class" or "Classification" ...................................................................... 12

    1.15.    "Confirmation Date" ................................................................................ 12

    1.16.    "Confirmation Hearing" ........................................................................... 12

    1.17.    "Confirmation Order" ............................................................................... 13

    1.18.    "Consummation of Plan" .......................................................................... 13

    1.19.    "Contingent Claim" .................................................................................. 13

    1.20.    "Creditor" ................................................................................................. 13

    1.21.    "Debtor" .................................................................................................... 13

    1.22.    "Disallowed" ............................................................................................ 13

    1.23.    "Disputed" ................................................................................................ 13

    1.24.    "Effective Date" ....................................................................................... 14

    1.25.    "Entity" ..................................................................................................... 14

    1.26.    "Equity Interest" ....................................................................................... 14

    1.27.    "Estate" ..................................................................................................... 14

    1.28.    "Exculpated Party" ................................................................................... 14

    1.29.    "Executory Contract" ............................................................................... 15

    1.30.    "Fee Application" ..................................................................................... 15

    1.31.    "Final Order" ............................................................................................ 15

1.32.    "Insider" ........................................................................................................... 15

1.34.    "Lien" ............................................................................................................... 16

1.35.    " Debtor" ........................................................................................................... 16

1.36.    "Paid in Full" .................................................................................................... 16

1.37.    "Person" ............................................................................................................ 16

1.38.    "Petition Date" ................................................................................................. 16

1.39.    "Plan" ................................................................................................................ 16

1.40.    "Priority Claim" ............................................................................................... 16

1.41.    "Priority Tax Claim" ........................................................................................ 16

1.42.    "Professional" ................................................................................................... 17

1.43.    "Professional Fee Claim" ................................................................................. 17

1.44.    "Property of the Estate" ................................................................................... 17

1.45.    "Pro Rata" ......................................................................................................... 17

1.46.    "Reorganized Debtor" ...................................................................................... 17

1.47.    "Schedules" ....................................................................................................... 17

1.48.    "Secured" .......................................................................................................... 17

1.49.    "Unsecured" ...................................................................................................... 18

II.    Background ................................................................................................................. 18

2.01.    Legal Background ............................................................................................. 18

2.02.    General Concept of the Plan. ........................................................................... 18

III.    Description of Assets .................................................................................................. 18

3.02.    Liquidation Analysis ........................................................................................ 19

3.03.    Lawsuits. ........................................................................................................... 20

IV.    Events Leading Up to Bankruptcy ............................................................................. 21

V.    Sources of Income ...................................................................................................... 23

VI.    Treatment of Unclassified Claims ............................................................................. 23

6.01.    Unclassified Claims. ......................................................................................... 23

6.02.    Administrative Claims. ..................................................................................... 24

6.03.    Statutory Fees. .................................................................................................. 24

6.04.    Priority Tax Claims. .......................................................................................... 24

6.05.    Bar Dates for Administrative Claims. .............................................................. 25

(a).   General Bar Date Provisions. ........................................................... 25

(b).   Post-Effective Date Professional Fee Claims. ................................... 25

VII.   Classification & Treatment Of Claims & Equity Interests ................................. 25

7.01.   Summary of Classification. ...................................................... 25

7.02.   Designation of Unimpaired & Impaired Classes. ........................... 26

7.03.   Acceptance of the Plan. ........................................................... 26

7.04.   Confirmation of Plan. ............................................................. 27

7.05.   Classification & Treatment of Claims & Security Interests. ..................... 27

7.1.1.   Class 1 – United States Trustee's Fees. ..................................... 27

7.1.2.   Class 2 – Administrative Claims. .............................................. 27

7.1.3.   Class 3. – Priority Tax Claims. ............................................... 28

7.1.4.   Class 4 – Cameron County Tax Office ....................................... 29

7.1.5.   Class 5 – G.E. Capital ............................................................ 30

7.1.6.   Class 6 – J.P. Morgan Chase .................................................. 30

7.1.7.   Class 7 – Plains Capital Bank ................................................. 31

7.1.7.   Class 8 – Prosperity Bank ...................................................... 32

7.1.8.   Class 9 – Volvo Financial Services .......................................... 32

7.1.9.   Class 10 – Wells Fargo .......................................................... 33

7.1.10.   Class 11 – General Unsecured Claims. ..................................... 34

7.1.11.   Class 12 – Subordinated Claims. ............................................ 34

7.1.12.   Class 13 – Equity Interests. .................................................... 35

VIII.   Implementation of the Plan ........................................................... 35

8.01.   Debtor. .................................................................................. 35

8.02.   Responsibilities. ..................................................................... 35

8.03.   Powers. ................................................................................. 36

8.04.   Compensation. ....................................................................... 36

8.05.   Termination. .......................................................................... 36

IX.   Treatment of Executory Contracts & Unexpired Leases ................................. 37

9.01.   Assumption or Rejection of Executory Contracts & Unexpired Leases. ..... 37

9.02.   Objections to Assumption of Executory Contracts & Unexpired Leases. ....... 37

9.03.   Payments Related to Assumption of Executory Contracts & Unexpired Leases. ...... 38

9.04.    Bar Date for Rejection Damages. ............................................................ 38

X.    Determination of Claims ............................................................................. 38

10.01.    Objections to Claims. ............................................................................ 38

10.02.    Contingent Claims. ................................................................................ 39

10.03.    Undeliverable/Returned Distributions. ................................................. 39

10.04.    Distributions On Allowance or Disallowance of Disputed Claims. ........... 39

10.05.    Reserve Pending Distributions. ............................................................. 40

10.06.    De Minimis Distributions. ..................................................................... 40

10.07.    Additional Charges. .............................................................................. 40

XI.    Jurisdiction Of The Court ........................................................................... 40

11.01.    General Retention of Jurisdiction. ........................................................ 40

11.02.    Specific Purposes. ................................................................................ 41

XII.    Effect of Confirmation .............................................................................. 43

12.01.    In General. ........................................................................................... 43

12.02.    Plan Injunction. .................................................................................... 43

12.03.    Discharge of Claims. ............................................................................ 44

12.04.    Discharge of Debtor. ............................................................................ 44

12.05.    Exculpations. ........................................................................................ 45

XIII.    Miscellaneous Provisions ......................................................................... 45

13.01.    Determination of Non-Enforceability of Any Material Provision of this Plan ......... 45

13.02.    Compliance with Tax Requirements ..................................................... 45

13.03.    Compliance with All Applicable Laws ................................................... 46

13.04.    Setoffs ................................................................................................. 46

13.05.    Recognition of Guarantee Rights .......................................................... 46

13.06.    Releases of Liens, Claims and Causes of Action ................................... 46

13.07.    Allowed Secured Claims ....................................................................... 47

13.08.    Release of Judgment Liens ................................................................... 47

13.09.    Guarantees; Indemnities; Notes; Bonds; Etc. ...................................... 47

13.10.    Release Upon Payment and Discharge .................................................. 47

13.11.    Authorization & Proponent ................................................................... 48

13.12.    Payment – Prepayment. ....................................................................... 48

13.13.   Notices. ...................................................................................................... 48

13.14.   Amendment or Modification To Plan ...................................................... 48

13.15.   Disbursing Agent. ................................................................................... 49

13.16.   Severability of Plan Provisions. ............................................................ 49

13.17.   Successors & Assigns. ........................................................................... 49

13.18.   Governing Law. ...................................................................................... 49

## I.    Definitions &Rules of Interpretation

### 1.01.    Rules of Interpretation.

Unless otherwise provided herein for purposes of the Plan: (a) whenever it is appropriate from the context, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (d) any reference to any Entity as a holder of a Claim includes that Entity's successors and assigns; (e) all references in the Plan to sections, Articles, and exhibits are references to sections, Articles and exhibits of or to the Plan; (f) the words "herein", "hereof", "hereunder," "hereto," and others of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and sections are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, the Plan; and (h) the rules of construction set forth in Section 102 of the U.S. Bankruptcy Code will apply.

### 1.02.    Computation of Time.

In computing any time period prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

As used in this Plan, the following terms have the following meanings:

### 1.03.    "Administrative Claim" or "Administrative Expense Claim"

Administrative Claim" or "Administrative Expense Claim means any cost, claim or expense of administration in this Chapter 11 case which has been allowed and entitled to priority in accordance with the provisions of §§503(b); 546(c)(2) or 507(b) and entitled to priority under the Bankruptcy Code §507(a)(1), including, any actual and necessary expenses of preserving the Debtor's estate including: (a) fees payable under 28 U.S.C. §1930; (b) actual and necessary costs and expenses incurred in the ordinary course of a Debtor's business; (c) actual and necessary costs

and expenses of preserving an Estate or administering the Chapter 11 Case; and (d) all Professional Fee Claims to the extent Allowed by Final Order of the Bankruptcy Code §§330, 331, of 503.

### 1.04.   "Avoidance Action"

Avoidance Action means causes of action arising under chapter 5 of the Bankruptcy Code, or under related state or federal statues and common law, including, without limitation, fraudulent transfer and fraudulent conveyance laws, whether or not litigation has commenced to prosecute such causes of actions.

### 1.05.   "Ballot"

Ballot means the form or forms distributed to each holder of an impaired Claim entitled to vote on the Plan on which the holder indicates acceptance or rejection of the Plan.

### 1.06.   "Bankruptcy Code"

Bankruptcy Code means title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 case.

### 1.07.   "Bankruptcy Court" or "Court"

Bankruptcy Court or Court means the United States Bankruptcy Court for the Southern District of Texas, Brownsville Division, or such other court as may have jurisdiction over the Chapter 11 case.

### 1.08.   "Bankruptcy Rules"

Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, as amended and prescribed under 28 U.S.C. §2075, applicable to the captioned Chapter 11 case.

### 1.09.   "Bar Date"

Bar Date means the deadline for filing proofs of claims against the Debtor or any other date established pursuant to an Order of the Court with respect to any other creditor; or, with respect to any allowed Administrative Claim or Claim arising with respect to rejection of an Executory contract, such other date as this Plan, the Court or the Bankruptcy Code may establish pursuant to the Plan (or other Order) and after which any proof of Claim filed will not be Allowed, and the later filing of which will have no effect on the distributions provided in this Plan or effect the

discharge or res judicata effect of any discharge or injunction provided in this Plan.   No informal filing, nor other document shall constitute a Proof of Claim except as provided in this Plan.

### 1.10.   "Business Day"

Business Day means any day other than a Saturday, Sunday, or legal holiday (as defined in Bankruptcy Rule 9006).

### 1.11.   "Cash"

Cash means currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

### 1.12.   "Chapter 11 Case" or "Case"

Chapter 11 Case or Case means the case under Chapter 11, of the Bankruptcy Code in which the Debtor is the Debtor-in-possession, pending before the Bankruptcy Court.

### 1.13.   "Claim"

Claim has the meaning assigned to such term by Section 101(5) of the Bankruptcy Code.

### 1.14.   "Class" or "Classification"

Class or "Classification means the particular class designated in the Plan, pursuant to Section 1122 and Section 1129 of the Bankruptcy Code, into which the Claims of all Creditors have been segregated for purposes of voting and distributions.

### 1.15.   "Confirmation Date"

Confirmation Date means the date the Bankruptcy Court enters the Confirmation Order.

### 1.16.   "Confirmation Hearing"

Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan under Bankruptcy Code Section 1129.

### 1.17. "Confirmation Order"

Confirmation Order means the order of the Bankruptcy Court confirming this Plan in accordance with the Bankruptcy Code.   The Confirmation Order need not necessarily be a Final Order.

### 1.18. "Consummation of Plan"

Consummation of Plan means the accomplishment of substantially all things contained or provided for in the Plan.

### 1.19. "Contingent Claim"

Contingent Claim means any Claim for which a proof of claim has been filed with the Bankruptcy Court that: (a) was not filed in a fixed amount, or has not accrued and depends on a future event that has not occurred any may never occur; and (b) has not been Allowed on or before the Confirmation Date.

### 1.20. "Creditor"

Creditor has the meaning assigned to such term by Section 101(1) of the Bankruptcy Code.

### 1.21. "Debtor"

Debtor means Sun Valley Motor Hotel, Ltd.

### 1.22. "Disallowed"

Disallowed means a Claim or any portion of a Claim that has been disallowed, overruled, withdrawn or expunged by Final Order.   The term "Disallowed", when used to modify a reference in this Plan to any Claim, Equity Interest, Class of Claims, or Class of Equity interests, means a Claim or Equity Interest (or any Claim or Equity Interest in any Class) that is so Disallowed.

### 1.23. "Disputed"

Disputed means (i) a Claim, Interest or Administrative Expense Claim that is subject to a pending objection; or (ii) until the deadline in the Plan for filing objections to claims:

(a)     a claim for which a corresponding Claim has not been listed in the Debtor's Schedules or for which the corresponding Claim is listed in the Debtor's Schedules with a differing amount, with a differing classification, or as a disputed, contingent, or unliquidated Claim;

(b)     a Claim which a Debtor in good faith believes is held by a holder either (i) from which property is recoverable by the applicable Debtor under any of Sections 542, 543, 550, or 553 of the Bankruptcy Code or (ii) that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code unless the holder has paid the amount, or turned over any such property for which such holder is liable under the terms of Sections 522(i), 542, 543, 550 or 553 of the Bankruptcy Code; and

(c)     in any event, a Claim which has been paid during the pendency of this Chapter 11 case pursuant to an order of the Court allowing the payment of such pre-petition claim.

### 1.24.   "Effective Date"

Effective Date means the first Business Day that is fourteen (14) days after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect.

### 1.25.   "Entity"

Entity shall have the meaning assigned to such term by Section 101(14) of the Bankruptcy Code.

### 1.26.   "Equity Interest"

Equity Interest means any equity interest in the Debtor represented by (a) any class or series of common or preferred stock, (b) any member interest; or (c) any general or limited partnership interest issued before the Effective Date, and any warrants, options or rights to purchase any common or preferred stock.

### 1.27.   "Estate"

Estate mens the estate for the Debtor created in the Chapter 11 Case under Bankruptcy Code Section 541.

### 1.28.   "Exculpated Party"

Exculpated Party means the Debtor, the Reorganized Debtor, the holders of Equity Interests, and their agents, offices, directors, managers, employees, representatives, advisors, attorneys, affiliates, shareholders, or members or any of their successors or assigns.

### 1.29. "Executory Contract"

Executory Contract shall mean any contract or agreement between the Debtor and any Person or entity pursuant to which a duty of performance remains on one or both sides.

### 1.30. "Fee Application"

Fee Application means the applications of Professional Persons for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

### 1.31. "Final Order"

Final Order means an order of a court: (a) to which the time to appeal, petition for writ of certiorari, or otherwise seek appellate review or to move for regargument, rehearing, or reconsideration has expired and as to which no appeal, petition for certiorari, or other appellate review, or proceedings for regargument, rehearing or reconsideration shall then be pending; or (b) as to which any right to appeal, petition for certiorari, or other appellate review, or proceedings for regargument, or reconsideration shall have been waived in writing by the party with such right; or (c) in the event such appeal, petition for certiorari, or other appellate review, or proceedings for regargument, rehearing or reconsideration thereof has been sought, which shall have been affirmed by the highest court to which such order was appealed, from which appeal, petition for certiorari, or other appellate review, or proceedings for regargument, rehearing or reconsideration was sought, and as to which the time to take any further appeal, to petition for writ of certiorari, to otherwise seek appellate review, and to move for regargument, rehearing, or reconsideration shall have expired; provided however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or under Section 1144 of the Bankruptcy Code, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

### 1.32. "Insider"

Insider has the meaning assigned to such term by Section 101(31) of the Bankruptcy Code.

### 1.33. "Insider Claims"

Insider Claims means any Claims held by Insiders of the Debtor.

**1.34. "Lien"**

Lien has the meaning assigned to such term by Bankruptcy Code §101(37), except for a lien that has been avoided in accordance with Bankruptcy Code §§544, 545, 546, 547, 548 or 549.

**1.35. " Debtor"**

Debtor means the post-confirmation Debtor

**1.36. "Paid in Full"**

Paid In Full means, with respect to the Plan, paid in Cash the Allowed Amount of the Claim.

**1.37. "Person"**

Person means any individual, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or associated political subdivision.

**1.38. "Petition Date"**

Petition Date means the date when the Chapter 11 Case was instituted (order for relief) by the Debtor filing its voluntary Petition

**1.39. "Plan"**

Plan means this Plan, either in its present form or as it may be amended, supplemented, or modified from time to time in accordance with the terms of this Plan, including, except where the context otherwise requires, all its annexed exhibits.

**1.40. "Priority Claim"**

Priority Claim means any Claim (or portion of a Claim) entitled to priority under Bankruptcy Code Section 507(a) other than Administrative Claims or a Priority Tax Claim.

**1.41. "Priority Tax Claim"**

Priority Tax Claim means any Claim of a governmental unit entitled to priority under Bankruptcy Code Section 507(a)(8).

**1.42.   "Professional"**

Professional means a Person (a) employed in the Chapter 11 Case in accordance with an order of the Bankruptcy Court under Bankruptcy Code §§327, 328, 329, 330, and 331 or order of the Bankruptcy Court; or (b) for whom compensation and reimbursement has been Allowed by a Final Order under Bankruptcy Code Section 503(b).

**1.43.   "Professional Fee Claim"**

Professional Fee Claim means an Administrative Claim for compensation and reimbursement of expenses of a Professional rendered or incurred before the Effective Date submitted in accordance with Bankruptcy Code §§328, 330, 331, or 503(b).

**1.44.   "Property of the Estate"**

Property of the Estate means all property in which the Debtor holds a legal or equitable interest, including all property described in Section 541 of the Bankruptcy Code.

**1.45.   "Pro Rata"**

Pro Rata means a proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim or Equity Interest in a Class to the amount of such Allowed Claim or Equity Interest is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims or Equity Interests in that Class to the amount of all Allowed Claims or Equity Interests in that Class.

**1.46.   "Reorganized Debtor"**

Reorganized Debtor means S & M Transport, L.L.C. after confirmation of the Plan.

**1.47.   "Schedules"**

Schedules means the schedules of assets and liabilities, the list of holders of interests, and the statements of financial affairs filed by a Debtor under Bankruptcy Code Section 521 and Bankruptcy Rule 1007, as the schedules, list, and statements may have been or may be supplemented or amended from time to time.

**1.48.   "Secured"**

Secured means any Claim (a) listed in the Schedules as liquidated, non-contingent, and undisputed secured Claim; or (b) reflected in a proof of claim as a Secured Claim, secured by a

Lien on Collateral to the extent of the value of the Collateral, as determined in accordance with Bankruptcy Code Section 506(a), or, if the Claim is subject to setoff under Bankruptcy Code Section 553, net the setoff.   The term "Secured" when used to modify a reference in this Plan to any Claim or Class of Claims means a Claim (or any Claim in any Class" that is so Secured.

**1.49. "Unsecured"**

Unsecured means any Claim against the Debtor's Estate for which the holder has no security for the repayment thereof and for which the holder is not entitled to any priority under the Bankruptcy Code.   The term "Unsecured," when used to modify a reference in this Plan to any Claim or Class of Claims, means a Claim (or any Claim in any Class) that is to Unsecured.

## II.   Background

**2.01.   Legal Background.**

On September 15, 2014 the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The filing of the petition constituted an order for bankruptcy relief under § 301 of the Bankruptcy Code.   Upon the filing of the case, an automatic stay was imposed pursuant to § 362(a) of the Bankruptcy Code.   The automatic stay prohibits most collection activities against the Debtor and its property.   There are certain exceptions set forth in § 362(b) of the Bankruptcy Code. The first date scheduled for the meeting of creditors under § 341(a) of the Bankruptcy Code was **October 21, 2014.**   When the Debtor filed this bankruptcy case, all of its property became property of its bankruptcy estate.

**2.02.   General Concept of the Plan.**

The Plan provides for the implementation of a repayment plan from the remaining assets of the Debtor providing for, among other things, the assets of the Debtor to remain in the Debtor to make Distributions upon Allowance of Claims by agreement or by resolution through the Bankruptcy Court in a Final Order.

## III.    Description of Assets

**3.01**.   The Debtor filed schedules of all of its assets and liabilities on October 21, 2013. Complete copies of the schedules are available from the Clerk of the Court.   The primary assets of the bankruptcy estate, their estimated values and associated liens are:

| Description of Asset | Estimated Fair Market Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate | Basis of Estimate of Value |
|---|---|---|---|---|---|
| Cash | $135,099.95 | $0.00 | $0.00 | $135,099.95 | Debtor's Bank Accounts |
| 5226 Commercial Drive, Brownsville Texas | $75,076.00 | $135,881.52 | $0.00 | $0.00 | Cameron County Appraisal Dist. |
| Accounts Receivable | $415,985.65 | $0.00 | $0.00 | $415,985.65 | Debtor's Books |
| Tractors & Trailers | $2,175,010.00 | $2,826,718.90 | $0.00 | $0.00 | Truck Paper |
| Office Equipment, Furnishings & Supplies | $12,820.00 | $0.00 | $0.00 | $12,820.00 | Schedule B |
| Pending Insurance Claim | Unknown | | $0.00 | $0.00 | | Schedule B |
| | | | | | |
| | **TOTAL** | | | **$563,905.60** | |

### 3.02.   Liquidation Analysis

Section 1129(a)(7)(A) of the Bankruptcy Code requires that each holder of a claim must either accept the plan or receive payments or property with a value of at least as much as would be available in a chapter 7 liquidation of the Debtor's assets.   As set forth above, each holder of a secured claim is either receiving its collateral or is being paid the value of its claim, with interest.   This treatment satisfies the liquidation test under § 1129(a)(7)(A).   Holders of priority claims are paid in full, with interest.   This also satisfies the requirements of § 1129(a)(7).   Holders of general unsecured claims are forecast to receive a dividend of 100% of their allowed claim.

In a chapter 7 liquidation, the estimated liquidation value of $563,905.60 would be applied to the chapter 7 Trustee's fees and expenses and then to priority claims.   This would produce the following:

| | |
|---|---|
| Liquidation Value | $563,905.60 |
| Estimated Trustee's Fees and expenses | $22,557.00 |
| Estimated priority claims | $55,000.00 |
| Total available for holders of unsecured claims | |
| Estimated unsecured claims | $1,183,997.19 |
| Estimated percentage recovery in liquidation | 41% |

Because the plan forecasts to pay holders of unsecured claims 51% of the amount of their claims and a chapter 7 liquidation is forecast to pay 51% this plan satisfies the liquidation test as to holders of unsecured claims.

**3.03. Lawsuits.**

The Debtor has identified the following lawsuits that may be filed by it.   Mark only those that apply.

Lawsuits to recover fraudulent transfers:

| Potential Defendant | Date(s) of Transfer(s) | Amount of Claim |
|---|---|---|
| None | | |
| | | |

Lawsuits to recover preferences:

| Potential Defendant | Date(s) of Transfer(s) | Amount of Claim |
|---|---|---|
| None | | |
| | | |

Lawsuits arising under other provisions of the Bankruptcy Code:

| Potential Defendant | Description of claim | Amount of Claim |
|---|---|---|
| None | | |
| | | |

Lawsuits arising under non-bankruptcy law

| Potential Defendant | Description of claim | Amount of Claim | Describe Whether Debtor Intends to Pursue Lawsuit and, if not, Why |
|---|---|---|---|
| Insurance Claim | 2013 Volvo Truck & Tractor total loss | Unknown | Pursuant to *In re Texas Wyoming Drilling*, 647 F.3d 547 (5th Cir. 2011), Debtor was engaged in pre-petition litigation with the Defendant and Debtor hereby specifically preserves the |

| Potential Defendant | Description of claim | Amount of Claim | Describe Whether Debtor Intends to Pursue Lawsuit and, if not, Why |
|---|---|---|---|
| | | | right, post-confirmation, to prosecute the lawsuit. |
| | | | |

## IV.    Events Leading Up to Bankruptcy

**4.01.**

### Company Background

S & M Transport, LLC (herein "S & M") had its humble beginnings on February 20, 2004 when owner operator Esequiel Silva along with co-owner and spouse Esmeralda Silva issued a $4,200 down payment on a 1998 Kenworth with a M11 Cummings engine.   The truck was leased to Romedu Express LLC.   Additionally Mr. Silva also served as General Manager for Romedu Express, LLC.   In 2004, the Silvas then purchased a 1997 Freightliner with a Detroit 60 series engine.    Later that year, the Freightliner was involved in an accident which resulted in a total loss of the freightliner.   The net proceeds of the insurance for the loss allowed the Silvas to purchase a new 2005 Kenworth.   Additionally, in 2006 the Silvas purchased a 2006 Kenworth truck.

In 2007 the 1998 Kenworth was sold for a profit and all of the proceeds went towards a purchase of a 2007 Kenworth.   On March 16, 2007 S & M was formed when permits and insurance were obtained and the company purchased an additional four trailers.   S & M began hauling dry freight for the very same customers it has today.   Later that year Romedu Express closed its doors and all of its former customers became customers of S & M.   S & M quickly began investing in additional trucks and trailers in order to handle the overwhelming demand for freight.   Vendors were placed on a seven to fifteen day pay to S & M allowing S & M to expand its services and customer base.   Additionally, in 2008 fuel prices sky rocketed and many trucking companies closed driving more customers to S & M.   S & M was successful in increasing its fuel surcharge in order to compensate for the increased fuel prices.

Today S & M Transport, LLC is a long-haul transport company that has been delivering goods for over 7 years.   S & M is EDI capable, JIT ready, and delivers goods door – to – door all over the continental United States and Mexico.   S & M currently owns and operates over twenty trucks (28) tractors and seventy (70) dry vans. We employ 28 over the road professional drivers, 4 office staff and 6 mechanics. This does not include numerous local vendors and dealerships that we purchase parts, fuel, tires and office supplies.

## **Reason For The Bankruptcy   Filing**

In 2008 the United States Congress enacted the Clean Air Act requiring an After Treatment System (cleaner emissions) and for optimum fuel economy to be installed in each and every new truck that was being manufactured to remove over 90% of particulate matter.   To compound the issue, the trucks that were equipped with the After Treatment System started breaking down and neither the S & M in house mechanics nor the dealership mechanics were equipped nor trained to repair the trucks causing outrageous towing fees and over the road repairs.   Additionally S & M began to incur heavy expenses for hotels and meals for stranded drivers and loss in revenue due to the extended down time the beleaguered trucks were experiencing.      Even the dealerships up to today struggle to repair these trucks.   85% of all the trucks that are the dealerships today in need of repair are directly linked to the after treatment system.

One of the major reasons the after treatments do not work properly are the sensors that basically read the oxygen, temperature, soot level, Selective Catalytic Reduction (SCR) Catalyst Nox sensor, deferential pressure sensors and the frequent incomplete regenerations that the onboard computer reads and shuts the truck down immediately where ever the truck may be.

Making matters worse, in 2013 the entire United States suffered a record breaking winter that lasted over nine months causing truck break downs across the country.  The trucks were breaking down everywhere because the on-board computers were reading faulty codes due to the extreme weather.   The after treatment system operates on extreme heat averaging temperatures of approximately 450 degrees.   In order to reach that temperature the diesel needs to inject into a flame that ignites the regeneration tank that disintegrates the soot that burns into ashes then comes out the exhaust.   The newer trucks come equipped with Diesel Exhaust System (DEF) liquid to help cool the tank after it reaches the 450 degree mark to be able to do a successful regeneration without any interruptions; problems persisted with the diesel jelling up due to the freezing temperatures along with the DEF.   This caused the stranding of trucks on the road side until the unit's fuel lines were able to be warmed by the heat of the sun.   The company even tried adding anti gel additives and that worked for the diesel but not for the DEF after treatment. Adding anti gelling additives to the DEF triggered the on-board computer to shut the engine down.

Today, S & M has invested in high tech computer software and equipment to detect faulty sensors that may cause the after treatment not to function properly.  The S & M team is also equipped to install a new complete regeneration system if needed.  S & M now has the capacity/knowledge   to remove the filters and take them to the dealership every 100,000 miles for maintenance and cleaning, whereas before all of the repairs had to be done at a dealership costing the company outrages hourly wages, downtime and loss of revenue for not delivering on time due to break downs on the road.   If the truck for whatever reason breaks down on the road anywhere in the USA S & M will send a mechanic with a lap top and force a regeneration and bring it back home to be diagnosed at the same time connecting   the lap top to the trucks onboard computer to

communicate with it and if needed to deliver the load first then bring it back home to be repaired at the S & M repair shop.

One of our best customers sells to Home Depot, Lowes and other home developers and they couldn't ship their product because the weather was so bad no one could build or rebuild. With the long winter, trucks breaking down and loss of business due to the weather the company lost drivers and lots of money precipitating the filing of this chapter 11 filing. The good news is that the housing market is on the rise, our rates have increased and we have a solid customer base. Our existing customers have all projected a 6-10% increase in sales resulting in year round steady work. This will increase efficiency, no dead head miles and decrease in fuel consumption and over the road expenses.  All of these things combined will assure the success of our chapter 11 repayment plan.


## V.   Sources of Income

**5.01.**   In the last three years, the Debtor's primary sources of income have been:

### Income From Operations

| Year | Source | Amount of Income |
|---|---|---|
| 2014 – to date | Trucking Operations | $5,628,182.78 |
| 2013 | Trucking Operations | $6,349,037.68 |
| 2012 | Trucking Operations | $6,393,360.17 |

### Income From Other

| Year | | Amount of Income |
|---|---|---|
| 2014-to date | None | |
| 2013 | | |
| 2012 | | |


## VI.    Treatment of Unclassified Claims

**6.01.   Unclassified Claims.**

As provided in Bankruptcy Code Section 1123(a)(1), Administrative Expense Claims and

Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under the Plan.  Holders of Administrative Expense Claims and Priority Tax Claims are not entitled to vote on this Plan but, rather are treated separately in accordance with Article 6.02 of this Plan and under Bankruptcy Code Section 1129(a)(9)(A).

### 6.02.   Administrative Claims.

Each holder of an Allowed Administrative Claim (except any holder that agrees to a lesser or otherwise different treatment) shall be paid in full, in Cash, in full satisfaction of such Claim, on the later of the Effective Date or the date on which such Administrative Claims becomes an Allowed Claim, provided however, that (a) Allowed Administrative Claims representing (i) post-petition liabilities incurred in the ordinary course of business by the Debtor, whether or not incurred in the ordinary course of business, shall be paid in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto and (b)  Professional Fee Claims shall be paid from Distributable Cash on the later of (i) thirty (30) days after the Effective Date, or (ii) thirty (30) days following the date of a Final Order determining and Allowing such Claim as a Professional Fee Claim.   In the event the Distributable Cash as of the distribution date is insufficient to pay all Allowed Professional Fee Claims in full, allowed Professional Fee Claims shall be paid from Distributable Cash on a Pro Rata basis in installments commencing thirty (30) days after the Effective Date and continuing on each ninety (90) day anniversary of the Effective Date until all Allowed Professional Fee Claims are paid in full.

### 6.03.   Statutory Fees.

On or before the Effective Date, Administrative Expense Claims for fees payable pursuant to 28 U.S.C. §1930, as determined by the Bankruptcy Court at the Confirmation Hearing, will be paid in Cash equal to the Allowed amount of such Administrative Expense Claims.  All fees payable pursuant to 28 U.S.C. §1930 subsequent to the Confirmation Date will be paid by the Reorganized Debtor in accordance therewith until the entry of a Final Decree and the administrative closing of the case.

### 6.04.   Priority Tax Claims.

Each holder of an Allowed Priority Tax Claim (except any holder that agrees to lesser or otherwise different treatment), at the election of the Debtor, shall (1) be Paid in Full, in Cash, in full satisfaction, settlement, release, extinguishment, and discharge of such Claim, on the later of (a) the Effective Date, (b) the date on which the Secured Tax Claim is scheduled to be paid in the ordinary course of business under applicable law or regulation or (2) receive treatment in any other manner such that its allowed Priority Tax Claim shall not be impaired pursuant to Section 1124 of the Bankruptcy Code, including, but not limited to, payment in accordance with the provisions of

Section 1129(a)(9)(C) of the Bankruptcy Code.

**6.05.   Bar Dates for Administrative Claims.**

**(a).      General Bar Date Provisions.**

The holder of an (i) Administrative Expense Claim, (ii) Professional Fee Claim;
(iii) Priority Secured Tax Claim; and (iv) statutory fee Claims must file with the
Bankruptcy Court and serve on the Debtor and its counsel no later than thirty (30)
days after the Confirmation Date, a request for payment of such Claim.   Such
request for payment must conform to the requirements provided for in the
Bankruptcy Code and Bankruptcy Rules and at a minimum identify the name of the
claimant, the nature of and basis for the Claim, and the amount of the Claim.
Holders of Administrative Expense Claims required to file for payment hereunder
who fail to Timely File and serve a request for payment will be forever barred from
asserting such Administrative Expense Claim against the Debtor, the Reorganized
Debtor and their respective property, and such Administrative Expense Claim shall
be deemed discharged as of the Effective Date.   An Administrative Expense Claim
will be Allowed if no objection is filed within thirty (30) days after filing and
service of a request for payment.   If an objection is filed to the Allowance of an
Administrative Expense Claim, such Claim shall become an Allowed
Administrative Expense Claim only to the extent Allowed by a Final Order.

**(b).      Post-Effective Date Professional Fee Claims.**

Any Professional Fee Claim incurred subsequent to the Effective Date by the
Reorganized Debtor, may be paid without application to the Bankruptcy Court.

## VII.   Classification & Treatment Of Claims & Equity Interests

**7.01.   Summary of Classification.**

In accordance with Bankruptcy Code Section 1123(a)(1), all Claims and Equity Interests
are placed in the Classes described below for all purposes, including voting on, confirmation of,
and distributions under, this Plan.   Financial Projections for the Plan are attached hereto as
**Exhibit #1** and incorporated by reference as if fully set forth at length.

**7.02.    Designation of Unimpaired & Impaired Classes.**

An analysis of this Plan, together with a detailed history of the Debtor is found in the Disclosure Statement which must be approved by the Court prior to the hearing on confirmation but not prior to the solicitation of acceptances under this Plan, and reference thereto should be made for such historic, explanatory, and financial information.   However such Disclosure Statement, as may be amended from time to time with Court approval, when and as approved is not a substitute for a full and complete reading of this Plan.   This Plan provides for resolution of all disputes with respect to property of the estate. Pursuant to 11 U.S.C. §1122 set forth below is a designation of classes of Claims and Interests.   Administrative Expenses and Priority Claims of the kinds specified in 11 U.S.C. §507(a)(8) have not been classified and are excluded from the following classes in accordance with 11 U.S.C. §1123(a)(1).   The following treatment shall be accorded claims or interests of the class of creditors shown:

| Class | Claim | Creditor | Impairment | Voting |
|-------|-------|----------|------------|--------|
| 1 | Priority | U.S. Trustee | Unimpaired | No (deemed to accept) |
| 2 | Priority | Attorney & C.P.A. Fees | Unimpaired | No (deemed to accept) |
| 3 | Priority | Internal Revenue Service | Impaired | Yes |
| 4 | Secured | Cameron County Tax Office | Impaired | Yes |
| 5 | Secured | G.E. Capital | Impaired | Yes |
| 6 | Secured | J.P. Morgan Chase | Impaired | Yes |
| 7 | Secured | Plains Capital Bank | Impaired | Yes |
| 8 | Secured | Prosperity Bank | Impaired | Yes |
| 9 | Secured | Volvo Financial Services | Impaired | Yes |
| 10 | Secured | Wells Fargo | Impaired | Yes |
| 11 | Unsecured | Unsecured Creditors | Impaired | Yes |
| 12 | Unsecured | Insiders | Unimpaired | No (deemed to accept) |
| 13 | Unsecured | Equity Interests | Unimpaired | No (deemed to accept) |

**7.03.    Acceptance of the Plan.**

An Impaired Class of Creditor shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and more than on-half (51%) in number of the Allowed Claims or such Class that have accepted or rejected the Plan.   Any impaired Class of Creditors in which no member votes to accept or reject the Plan will be deemed to have accepted the Plan.

### 7.04.   Confirmation of Plan.

In the event any impaired Class fails to accept the Plan, in accordance with Section 1129(a) of the Bankruptcy Code the Debtor, as the Plan proponent, reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

### 7.05.   Classification & Treatment of Claims & Security Interests.

### 7.1.1.   Class 1 – United States Trustee's Fees.

This class is not impaired and is deemed to have accepted the Plan.

Trustee's fees will be paid within fourteen (14) days of the Effective Date of the plan.   All post-confirmation U.S. Trustee's fees shall be paid in cash in full as they come due until the case is closed.   The Debtor shall continue to file monthly operating reports until the case is closed by final decree.

### 7.1.2.   Class 2 – Administrative Claims.

This class is not impaired.

Each holder of an Allowed Administrative Claim shall receive from the Debtor with respect to such Allowed Claim, either (i) the amount of such Allowed Claim from the Debtor in one (1) cash payment on the later of (a) the Effective Date, (b) the date that is sixty (60) days after a request for payment of the Claim is filed, (c) the date that is twenty (20) days after the Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed upon in writing by such holder; provided, that an Allowed Administrative Claim representing a liability incurred in the ordinary course of business shall be paid by the Debtor upon presentment or otherwise in accordance with the terms of the particular transaction and any agreements relating thereto.

Applications for compensation and reimbursement filed by professionals employed under Section 327 of the Bankruptcy Code or otherwise employed by order of the Bankruptcy Court shall be filed no later than sixty (60) days after the Effective Date.   All other requests for payment of Administrative Claims (or any other means of preserving and obtaining payment of Administrative Claims found to be effective by the Bankruptcy Court) shall be filed by the earlier of (i) thirty (30) days after the date of service of notice of the Effective Date, or (ii) any applicable bar date established by the Bankruptcy Court and notices separately by the Debtor, and if no timely request for payment of Administrative Claim is received, such claim shall be forever barred and

shall not be assertable in any manner against the Debtor or the estate provided, no request for payment shall be required with respect to Administrative Claims that have been paid previously or with respect to Administrative Claims representing liabilities incurred in the ordinary course of business, unless a dispute exists as to any such liabilities or unless the provisions of the Bankruptcy Code require approval or allowance by the Bankruptcy Court as a precondition to payments being made on any such liability.

### 7.1.3.    Class 3. – Priority Tax Claims.

This Class is impaired

The Internal Revenue Service shall receive payment of its Allowed Claim, in full, and such claim shall be paid within sixty (60) months from the Petition date, with statutory interest of 3% per annum,, in equal monthly payments beginning sixty (60) days from the Order of Relief for the number of months remaining from such start date until the date which is sixty (60) months from the Order of Relief.

The debt owed by the debtor to the I.R.S. is a nondischargeable debt, except as otherwise provided for in the Code, and if the debtor should default, the IRS is not subject to the provisions of the Bankruptcy Code so that the IRS can take whatever actions are necessary to collect said debt in the event of default. A failure by the debtor to make a payment to the IRS pursuant to the terms of the Plan shall be an event of default; as to the IRS, there is an event of default if payment is not received by the thirtieth (30th) day of each month; if there is default to the IRS, the IRS must send written demand for payment to the debtor and said payment must be received by the IRS within fifteen (15) days of the date of the demand letter; the debtor can receive up to five (5) notices of default from the IRS, the fifth (5th) default cannot be cured and the IRS may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies.  These default provisions pertain to the entire claim(s) of the IRS, secured, unsecured priority and unsecured general.

The IRS is bound by provisions of the confirmed Plan and is barred under 11 U.S.C. §1141 from taking any collection action against the debtor for pre-petition claims during the duration of the Plan (provided there is no default as to the IRS).   The period of limitations on collection remains suspended under 26 U.S.C. § 6503(h) for tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the IRS have been made; or (2) thirty (30) days after the date of the demand letter (described above) for which the debtor failed to cure the default.

 Debtor's failure to remain current on its ongoing tax obligations shall be an event of default under the Agreed Order in this case and this Confirmation Order.   Provided, however, that debtor's failure to make a timely tax deposit as required by law may be cured by debtor making the next succeeding required deposit, but such deposit must include both the current amount due, as well as the amount previously due but not paid.   Any failure by debtor to make this next succeeding deposit for

the total amount due shall be deemed a final default that will allow the IRS to pursue collection activities immediately without further order of this Court.

Default for which debtor shall receive notice and opportunity to cure - the following event of default may be cured by the debtor as follows:     A failure by the debtor to make a payment to the IRS pursuant to the terms of the Confirmed Plan on file in this case (except as to debtor's ongoing tax obligations) or of its bankruptcy plan shall be an event of default if payment is not received by the thirtieth (30th) day of each month.   If there is such a default as to the IRS, the IRS must send written demand for payment to the debtor at the address listed in the bankruptcy petition and said payment must be received by the IRS within fifteen (15) days of the date of the demand letter; the debtor can receive up to five (5) notices of default from the IRS, but the fifth (5th) default cannot be cured.

IRS remedies upon default: Upon any final and non-curable default by debtor, IRS may accelerate its allowed pre and post petition claims, and any future administrative claims, and declare the outstanding amount of such claims to be immediately due and owing and pursue any and all available state and federal rights and remedies as provided by law without further order of this Court." **The Internal Revenue Service stipulates and agrees that it will not proceed with any collection action against third parties so long as the Debtor does not default under the terms of this Plan.**

### 7.1.4.   Class 4 – Cameron County Tax Office

This claim is impaired.

 Notwithstanding anything to the contrary contained within the Plan or approved Disclosure Statement, the secured tax claims owing to Cameron County shall be paid by the Debtor in sixty (60) equal monthly installments, calculated thirty (30) days from September 15, 2014.   The Claims shall bear interest at the statutory rate of 12% per annum from the date of filing of this case until said taxes are paid in full.   The Taxing Entities shall retain all liens until all taxes are paid in full.

The 2015 ad valorem taxes owed to the Taxing Entities shall be paid in the ordinary course of business and Taxing Entities shall not be required to file a request for allowance and payment of its claim.   If any property which secures the ad valorem tax claims is foreclosed by any lien holder, Taxing Entities shall be free to pursue their state law remedies for collection of all amounts due under the Texas Property Tax Code.

Default shall occur if one monthly installment due to Taxing Entities under the confirmed Plan is not paid by Debtor or if post-confirmation taxes (including 2015 taxes) are not paid timely pursuant to state law.   In the event of default in the monthly payments required to be paid to Taxing Entities, the Entity shall send written notice of default to Debtor's attorney and Debtor.   If the default is not cured within twenty (20) days after notice of the default is mailed, the Taxing

Entities may proceed with state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code.   In the event of a second default, Taxing Entities may proceed with the state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code. If the event the Debtor fails to timely pay post-petition taxes, Taxing Entities shall be free to proceed with the state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code without further notice or court order.

### 7.1.5.    Class 5 – G.E. Capital

This Class is Impaired.

The treatment of General Electric Capital Corporation is governed solely by the terms of the Agreed Order Regarding Payment of General Electric Capital Corporation and Conditioning the Automatic Stay that was entered in this case on December 1, 2014, and which is incorporated by reference herein for all purposes."

 Debtor will continue to remit monthly adequate protection payments to G.E. until confirmation.  Following confirmation, Debtor shall pay G.E.'s allowed secured claim with interest over the payment term as set forth in Debtor's Financial Projections attached hereto as Exhibit 1 and incorporated by reference as if fully set forth at length commencing on the 10th day of the month following one full month after the Effective Date and continuing each month thereafter until paid in full provided, however, that the aforesaid payment term shall be reduced by one month for each adequate protection payment received by G.E. before confirmation.   Debtor's pre-petition loan documents with G.E. shall remain in effect, except as expressly modified by the terms set forth herein for the treatment of Class 5.   G.E. shall also retain its pre-petition liens until its allowed secured claim is paid in full.

Default under the plan ("Plan Default") shall occur if Debtor fails to make a required monthly payment to G.E. or fails to maintain adequate insurance on the G.E. collateral.   If "Plan Default" occurs, G.E. shall send written notice of default to Debtor's address as stated in the Bankruptcy Petition with a copy to Debtor's attorney. If the Debtor fails to cure the Plan Default within twenty (20) days of the date that notice was sent, it is a Final Default under this Order. G.E. is only required to send two notices of Plan Default, with opportunity to cure. If there is a third Plan Default after two (2) cures, it is a Final Default and no further notice of an opportunity to cure must be given, and G.E. may then proceed with state law remedies for collection of all amounts due under state law.

### 7.1.6.    Class 6 – J.P. Morgan Chase

This Class is Impaired.

J.P. Morgan Chase Capital (herein "Chase") shall have an Allowed secured claim in the amount of $968,500.00 plus accrued interest since September 15, 2014 at the rate of 5.25% and a Class 11 General Unsecured Claim in the amount of $258,648.75.

Debtor will continue to remit monthly adequate protection payments to Chase until confirmation. Following confirmation, Debtor shall pay Chase's allowed secured claim with interest over the payment term as set forth in Debtor's Financial Projections attached hereto as Exhibit 1 and incorporated by reference as if fully set forth at length commencing on the 10th day of the month following one full month after the Effective Date and continuing each month thereafter until paid in full provided, however, that the aforesaid payment term shall be reduced by one month for each adequate protection payment received by Chase before confirmation. Debtor's pre-petition loan documents with Chase shall remain in effect, except as expressly modified by the terms set forth herein for the treatment of Class 6. Chase shall also retain its pre-petition liens until its allowed secured claim is paid in full.

Default under the plan ("Plan Default") shall occur if Debtor fails to make a required monthly payment to Chase or fails to maintain adequate insurance on the Chase collateral. If "Plan Default" occurs, Chase shall send written notice of default to Debtor's address as stated in the Bankruptcy Petition with a copy to Debtor's attorney. If the Debtor fails to cure the Plan Default within twenty (20) days of the date that notice was sent, it is a Final Default under this Order. Chase  is only required to send two notices of Plan Default, with opportunity to cure. If there is a third Plan Default after two (2) cures, it is a Final Default and no further notice of an opportunity to cure must be given, and Chase may then proceed with state law remedies for collection of all amounts due under state law.

### 7.1.7.   Class 7 – Plains Capital Bank

This Class is Unimpaired.

Notwithstanding any other provision in this Plan, with respect to Plains Capital Bank, Plains Capital Bank shall retain the liens provided in for in the pertinent Deed of Trust and Extension of Real Estate Lien including, without limitation, its liens, including any liens and related assignments of rents derived from its collateral and that the terms of such documents remain in effect except as expressly modified by the Plan.   The Debtor shall continue to pay its regular installments of principal and interest as they come due under the terms of the existing loan documents.

In the event that the Debtor defaults under the Plan (a "Plan Default"), or with respect to the performance of any provision of the loan documents arising subsequent to confirmation but during the term of the Plan (a "Loan Default"), Plains Capital Bank shall send written notice of default to Debtor's address stated in the Bankruptcy Petition with a copy to Debtor's attorney. If

the Debtor fails to cure the Plan Default or Loan Default within twenty (20) days of the date that notice was sent, it is a Final Default under this Order.  Plains Capital Bank is only required to send two notices of Plan Default or Loan Default, with opportunity to cure. If there is a third Plan Default or Loan Default after two (2) cures, it is a Final Default and no further notice of an opportunity to cure must be given, and Plains Capital Bank may then proceed with its remedies under applicable law and regulations.

### 7.1.7.   Class 8 – Prosperity Bank

This Class is Impaired.

Prosperity Bank (herein "Prosperity") shall have an Allowed secured claim in the amount of $47,800.00 plus accrued interest since September 15, 2014 at the rate of 5.25% and a Class 11 General Unsecured Claim in the amount of $4,417.49.

Debtor will continue to remit monthly adequate protection payments to Prosperity until confirmation.  Following confirmation, Debtor shall pay Prosperity's allowed secured claim with interest over the payment term as set forth in Debtor's Financial Projections attached hereto as Exhibit 1 and incorporated by reference as if fully set forth at length commencing on the 10th day of the month following one full month after the Effective Date and continuing each month thereafter until paid in full provided, however, that the aforesaid payment term shall be reduced by one month for each adequate protection payment received by Prosperity before confirmation.   Debtor's pre-petition loan documents with Prosperity shall remain in effect, except as expressly modified by the terms set forth herein for the treatment of Class 8.  Prosperity shall also retain its pre-petition liens until its allowed secured claim is paid in full.

Default under the plan ("Plan Default") shall occur if Debtor fails to make a required monthly payment to Prosperity or fails to maintain adequate insurance on the Prosperity collateral. If "Plan Default" occurs, Prosperity shall send written notice of default to Debtor's address as stated in the Bankruptcy Petition with a copy to Debtor's attorney. If the Debtor fails to cure the Plan Default within twenty (20) days of the date that notice was sent, it is a Final Default under this Order. Prosperity is only required to send two notices of Plan Default, with opportunity to cure. If there is a third Plan Default after two (2) cures, it is a Final Default and no further notice of an opportunity to cure must be given, and Prosperity may then proceed with state law remedies for collection of all amounts due under state law.

### 7.1.8.   Class 9 – Volvo Financial Services

This claim is impaired.

Volvo Financial Services (herein "Volvo") shall have an Allowed secured claim in the amount of $497,935.00 plus accrued interest since September 15, 2014 at the rate of 5.25% and a Class 11 General Unsecured Claim in the amount of $127,829.41.

Debtor will continue to remit monthly adequate protection payments to Volvo until confirmation. Following confirmation, Debtor shall pay Volvo's allowed secured claim with interest over the payment term as set forth in Debtor's Financial Projections attached hereto as Exhibit 1 and incorporated by reference as if fully set forth at length commencing on the 10th day of the month following one full month after the Effective Date and continuing each month thereafter until paid in full provided, however, that the aforesaid payment term shall be reduced by one month for each adequate protection payment received by Volvo before confirmation. Debtor's pre-petition loan documents with Volvo shall remain in effect, except as expressly modified by the terms set forth herein for the treatment of Class 9.  Volvo shall also retain its pre-petition liens until its allowed secured claim is paid in full.

Default under the plan ("Plan Default") shall occur if Debtor fails to make a required monthly payment to Volvo or fails to maintain adequate insurance on the Volvo collateral.  If "Plan Default" occurs, Volvo shall send written notice of default to Debtor's address as stated in the Bankruptcy Petition with a copy to Debtor's attorney. If the Debtor fails to cure the Plan Default within twenty (20) days of the date that notice was sent, it is a Final Default under this Order. Volvo is only required to send two notices of Plan Default, with opportunity to cure. If there is a third Plan Default after two (2) cures, it is a Final Default and no further notice of an opportunity to cure must be given, and Volvo may then proceed with state law remedies for collection of all amounts due under state law.

### 7.1.9.  Class 10 – Wells Fargo

This claim is impaired.

Wells Fargo (herein "Wells") shall have an Allowed secured claim in the amount of $48,250.00 plus accrued interest since September 15, 2014 at the rate of 5.25% and a Class 11 General Unsecured Claim in the amount of $6,017.49.

Debtor will continue to remit monthly adequate protection payments to Wells until confirmation. Following confirmation, Debtor shall pay Well's allowed secured claim with interest over the payment term as set forth in Debtor's Financial Projections attached hereto as Exhibit 1 and incorporated by reference as if fully set forth at length commencing on the 5th day of the month following one full month after the Effective Date and continuing each month thereafter until paid in full provided, however, that the aforesaid payment term shall be reduced by one month for each adequate protection payment received by Wells before confirmation. Debtor's

pre-petition loan documents with Wells shall remain in effect, except as expressly modified by the terms set forth herein for the treatment of Class 10.  Wells shall also retain its pre-petition liens until its allowed secured claim is paid in full.

Default under the plan ("Plan Default") shall occur if Debtor fails to make a required monthly payment to Wells or fails to maintain adequate insurance on the Wells collateral.  If "Plan Default" occurs, Wells shall send written notice of default to Debtor's address as stated in the Bankruptcy Petition with a copy to Debtor's attorney. If the Debtor fails to cure the Plan Default within twenty (20) days of the date that notice was sent, it is a Final Default under this Order. Wells is only required to send two notices of Plan Default, with opportunity to cure. If there is a third Plan Default after two (2) cures, it is a Final Default and no further notice of an opportunity to cure must be given, and Wells may then proceed with state law remedies for collection of all amounts due under state law.

### 7.1.10.  Class 11 – General Unsecured Claims

This Class is impaired.

Holders of General Unsecured Claims will receive a fifty one percent (51%) dividend (more or less) on their allowed claims, in equal monthly installments at 0% interest beginning on the tenth (10th) day of the first month following ninety (90) days from the Effective Date and continuing each month for sixty months on the same date of the month as the initial payment until paid.

Default under the plan ("Plan Default") shall occur if Debtor fails to make a required monthly payment.  If "Plan Default" occurs Class 11 Creditors shall send written notice of default to Debtor's address with a copy to Debtors' attorney. If the Debtor fails to cure the Plan Default within twenty (20) days of the date that notice was sent, it is a Final Default under this Order. Class 11 Creditors are only required to send two notices of Plan Default, with opportunity to cure. If there is a third Plan Default after two (2) cures, it is a Final Default and no further notice of an opportunity to cure must be given, Class 11 Creditors may then proceed with state law remedies for collection of all amounts due under state law.

### 7.1.11.  Class 12 – Subordinated Claims.

This class consists of any claims held by insiders or affiliates of the Debtor.  Holders of Subordinated Claims will retain their claims, but shall not receive any payment until senior classes are paid in full, after which the holders of Subordinated Claims will be paid pari passeu on a

pro-rata basis from sales of remaining Property.

### 7.1.12.   Class 13 – Equity Interests.

Holders of Equity Interests in the Debtor shall retain their interests, but shall not receive any payments or distributions on account of those interests until all senior classes are paid in full. It is agreed and acknowledged by the Debtor that noting in the Plan, or in the Order Confirming the Plan, changes, alters, or modifies:   (i) the Debtor's partnership agreements as amended form time to time; (ii) the rights and obligations of the Debtor or any partner (whether general or limited) under the partnership agreement.

## VIII.    Implementation of the Plan

### 8.01.   Debtor.

From and after the Effective Date, Debtor will exist as the Debtor.   Except as otherwise provided in the Plan, the Debtor will remain in possession and ownership of all of the assets of Debtor and shall operate them in its best business judgment without further oversight of the Bankruptcy Court.   Mr & Mrs. Silva shall continue to act as the Manager of the Debtor.

### 8.02.   Responsibilities.

The Debtor shall perform all of the obligations under the Plan, including obligations to pay or otherwise satisfy the Allowed Claims.   All Cash necessary for the Debtor to make payments pursuant to the Plan shall be obtained from the Debtor's existing Cash Balances, operations of the Debtor and sale of the Real Property.

(a)      From and after the Effective Date, the Debtor shall, among other things:

(1)      administer the Plan and take all steps and execute all instruments and documents necessary to effectuate the Plan;

(2)      resolve Disputed Claims, and administer the Claims allowance and disallowance process as set forth in the Plan, including, without limitation, objecting, prosecuting, litigating, reconciling, settling and resolving Claims and Disputed Claims in accordance with the Plan;

(3)      make decisions regarding the retention, engagement, payment and replacement of professionals, employees and consultants;

(4)     administer the Distributions under the Plan, including (i) making Distributions in accordance with the terms of the Plan and (ii) establishing and maintaining the various Reserves;

(5)     exercise such other powers as necessary or prudent to carry out the provisions of the Plan;

(6)     invest any cash pending Distribution;

(7)     file appropriate tax returns; and

(8)     take such other actions as may be necessary or appropriate to effectuate this Plan.

(b)     Following the Effective Date, the Debtor may pay its post Effective Date operating expenses in the ordinary course of business without further notice or orders of this Court.

**8.03.  Powers.**

The powers of the Debtor shall include the power to (i) invest funds; (ii) make distributions; (iii) pay taxes and other obligations owed by the  Debtor or incurred by the Debtor; (iv) engage and compensate from the Estate Assets, consultants, agents, employees and professional persons to assist the  Debtor with respect to its responsibilities; (v) liquidate and dispose of the Estate Assets; (vi) compromise and settle Claims and causes of actions; (vii) act on behalf of the Debtor and the Estate in all adversary and contested matters; (viii) commence and/or pursue any and all actions involving the Estate Assets; (ix) to purchase appropriate insurance, as necessary, to insure the acts and the omissions of the   Debtor; and (x) to implement this Plan and orders of the Bankruptcy Court. The Debtor shall exercise such powers in accordance with the provisions of this Plan.

**8.04.  Compensation.**

In addition to reimbursement for the actual reasonable and necessary expenses incurred, any employees, agents, consultants or professionals engaged or retained by the Debtor, shall be entitled to reasonable compensation from the Estate Assets for services rendered in connection with the performance of the duties of the Debtor as set forth above.

**8.05.  Termination.**

The duties, responsibilities and powers of the Debtor shall terminate after Debtor has made all of its distributions under the terms of the Plan.

### IX.   Treatment of Executory Contracts & Unexpired Leases

**9.01.   Assumption or Rejection of Executory Contracts & Unexpired Leases.**

On the Effective Date, except as otherwise provided in the Plan, any unexpired lease or Executory contract that has not been previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court shall be deemed rejected by the Debtor under Sections 365(a) and 1123 of the Bankruptcy Code.   Entry of the Confirmation Order shall constitute approval of such assumptions or rejections, as the case may be (as such lists may be amended, supplemented or modified on or before the Confirmation Date) pursuant to Sections 365(a) and 1123 of the Bankruptcy Code.   Any motions to assume Executory contracts and unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.   Below is list of pending Executory Contacts.   The amount shown under "Amount Required to Cure Any Default" will be paid not later than 30 days after the Effective Date of the Plan.

| Contracting Party | Description of Contract | Amount Required to Cure Any Default |
|---|---|---|
| None | | |
| | | |
| | | |
| | | |

**9.02.   Objections to Assumption of Executory Contracts & Unexpired Leases.**

To the extent that any party to an Executory Contract or unexpired lease identified for assumption, or any other party in interest,   (a) asserts arrearages or damages pursuant to Section 365(b)(1) of the Bankruptcy Code in an amount different from the amount, if any, set forth in the Petition and Schedules and the Plan, (b) has any objection to the proposed adequate assurance of future performance, if required, or (c) has any other objection to the proposed assumption, cure, or assignment of a particular Executory contract or unexpired lease on the terms and conditions provided for herein, all such asserted arrearages and any other obligations shall be filed and served within the same deadline and in the same manner established for filing objections to Confirmation.

Failure to assert any arrearages different from the amount set forth in the Schedules or to file an objection within the time period set forth above, shall constitute consent to the assumption, cure and assignment on the terms provided for herein, including acknowledgement that (a) the Debtor (or its assigns) have provided adequate assurance of future performance, if required (b) the amount identified for 'cure," if any, is the amount necessary to compensate for any and all outstanding defaults or actual pecuniary loss under the Executory contract or unexpired lease to be

assumed, and (c) no other defaults exist under such Executory contract or unexpired lease.

If an objection to assumption and assignment is filed based upon lack of adequate assurance of future performance or otherwise, and the Court determines that the Debtor cannot assume the Executory contract or unexpired lease as proposed or as may be proposed pursuant to a modified proposed submitted by the Debtor, then the unexpired lease or Executory contract shall automatically thereupon be deemed to have been rejected.

### 9.03.   Payments Related to Assumption of Executory Contracts & Unexpired Leases.

Any monetary defaults, including claims for actual pecuniary loss, under each Executory contract and unexpired lease to be assumed under the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount, if any, as otherwise agreed by the parties, or as ordered by the Bankruptcy Court in Cash within 90 days following the Effective Date, or on such other terms as my be agreed to by the parties to such Executory contract or unexpired lease.   In the event of a dispute regarding (a) the amount of any cure or pecuniary loss or payment, (b) the ability of the  Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, if required, or (c) any other matter pertaining to assumption, the cure or pecuniary loss payments required by Section 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following entry of a Final Order resolving the dispute and approving assumption.

### 9.04.   Bar Date for Rejection Damages.

If the rejection of an Executory contract or unexpired lease pursuant to this Article gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is an Allowed Claim, shall be classified as a Class 11 General Unsecured Claim; provided however, that the Unsecured Claim arising from rejection shall be forever barred and shall not be enforceable against the Debtor,  Debtor, its successors or properties, unless a proof of Claim is filed and served on the Debtor within 30 days after the date of the notice of entry of an order of the Bankruptcy Court authorizing rejection of the Executory contract or unexpired lease, which order may be the Confirmation Order.

## X.   Determination of Claims

### 10.01.  Objections to Claims.

Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has

been Allowed under the Plan before the Effective Date, the   Debtor may object to the Allowance of any Claim against the Debtor and seek estimation of any Claim on any grounds permitted by the Bankruptcy Code.   All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first business day that is 60 days after the Effective Date, but the Bankruptcy Court may approve a later date on the Debtor's motion filed (but not necessarily heard) before the first business day that is 60 days after the Effective Date.

### 10.02.  Contingent Claims.

Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under this Plan.   The holder of a Contingent Claim will be entitled to a distribution under this Plan only when the Contingent Claim becomes an Allowed Claim.   Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with the Debtor on a Claim of a Creditor is Disallowed as of the Effective Date if (a) that Creditor's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under Bankruptcy Code Section 509.

### 10.03.   Undeliverable/Returned Distributions.

Any distribution to be made to a Creditor will be sent to that Creditor at (i) the address set forth on the proof of claim filed for such Creditor, or (ii) if no proof of claim is filed, at the address set forth on the Debtor's schedules.   In the event that a distribution as herein provided is returned as undeliverable, or a distribution is returned on account of there being no payment due to the affected Creditor, the Debtor shall hold such distribution for the affected Creditor for a period of 60 days following the Date of that Distribution for the benefit of the Creditor.   If the affected Creditor does not make a demand, in writing, for such unclaimed distribution within the 60-day period, the Creditor shall forfeit all entitlement to the distribution, and the distribution shall revert to the Debtor.

### 10.04.  Distributions On Allowance or Disallowance of Disputed Claims.

No distributions will be made to any holder of a Claim unless and until the Claim becomes an Allowed Claim.   If a Claim is not an Allowed Claim as of the Effective Date, distributions on account of that Claim will commence only when the Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in the Plan.   If a Disputed Claim becomes an Allowed Claim, the Debtor will make a distribution in accordance with the terms of this Plan applicable to Claims of the Class in which that Claim resides.

**10.05.  Reserve Pending Distributions.**

With respect to Disputed Claims in Class 11 (General Unsecured Claims), on a monthly basis and at the same time as the Debtor makes installment payments to the holders of Allowed Claims in such class hereunder, the Debtor shall set aside the Disputed Claims Reserve equal to the amount the holder of the Disputed Claim would have received had such Disputed Claim been an Allowed Claim as of the Effective Date.   Such Disputed Claims Reserve shall be released to the holder of a Disputed Claim within fourteen (14) days after it becomes an Allowed Claim so that such holder will receive all accrued but unmade payments as of such date so that such holder will receive equal treatment to holders of Allowed Claims.   For purposes of the Disputed Claims Reserve, the Debtor shall reserve based upon the amount reflected in the books and records of the Debtor.

**10.06.  De Minimis Distributions.**

Any other provision of the Plan, notwithstanding, the Debtor shall not be required to make distributions to holders of Allowed Claim in an amount less than $50.00 (unless such Allowed Claim is less than $50.00)   Cash allocated to an Allowed Claim but withheld from distribution pursuant to this subsection shall be held by the Debtor for the account of an future distribution to the holder of such Allowed Claim.

**10.07.  Additional Charges.**

Except as may be expressly provided in the Plan or allowed by Final Order, of the Bankruptcy Court, no interest, penalty, attorney's fee or late charge shall be allowed or paid with respect to any Claim.

## XI.   Jurisdiction Of The Court

**11.01.  General Retention of Jurisdiction.**

Until the Bankruptcy Case is Closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction permissible, including, without limitation, that necessary (a) to ensure that the purposes and intent of the Plan are carried out, (b) to enforce and interpret the terms and conditions of the Plan, and (c) to enter such orders or judgments including, without limitation, injunctions necessary to enforce the rights, title, and powers of the Debtor and/or the Debtor. Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Interests in the Debtor.   Nothing contained herein shall prevent the Debtor from taking such action as may be necessary in the enforcement of any cause of action that each has or may have and that may not have been enforced or prosecuted by the Debtor, which

cause of action shall survive entry of the Confirmation Order and occurrence of the Effective Date and shall not be affected thereby except as specifically provided herein.

**11.02.  Specific Purposes.**

Without limiting the effect of Article 11.01 the Bankruptcy Court shall retain jurisdiction after Confirmation to:

(a)    modify the Plan after entry of the Confirmation Order, pursuant to the provisions of the Plan, the Bankruptcy Code, and the Bankruptcy Rules;

(b)    correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modification in or to the Plan, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(c)    hear or determine any cause of action, and to enter and implement such orders as may be necessary or appropriate, to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated there under;

(d)    hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, and to enforce, including by specific performance, the provisions of the Plan;

(e)    hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of any settlement agreements enter into by the Debtor during the Case;

(f)    enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, transfers of property or property rights, or other obligations contained in the Plan and the Confirmation Order

(g)    assure the performance of the Debtor of its obligations to make distributions under the Plan;

(h)    enter such orders or judgments, including injunctions, as necessary to enforce the title, rights, and powers of the Debtor,   Debtor, or the Plan;

(i)    hear and determine any and all adversary proceedings, applications, and contested matters, including any remands after appeal;

(j)    ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(k)     hear and determine any timely objections to or motions or applications concerning Claims or the allowance, classification, priority, compromise, setoff, estimation, or payment of any Claim, to the fullest extent permitted by the provisions of Section 157 of Title 28 of the United States Code;

(l)     enter an implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(m)     hear and determine any motions, contested matters or adversary proceedings involving taxes, tax refunds, tax attributes, tax benefits, and similar or related mattes with respect to the Debtor and/or   Debtor arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Case;

(n)     hear and determine all applications for the employment or compensation of Professional Persons and reimbursement of expenses under Sections 330, 331 or 503(b) of the Bankruptcy Code or the Plan;

(o)     recover all assets of the Debtor and Property of the Estates wherever located, including actions under chapter 5 of the Bankruptcy Code;

(p)     hear and determine any and all motions pending as of the Confirmation Date for the rejection, assumption, or assignment of Executory contracts or unexpired leases and the allowance of any Claim resulting there from;

(q)     hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(r)     consider and act on the compromise and settlement of any Claim against, or Interest in the Debtor, including without limitation, any disputes relating to any Administrative Claims, any Bar Date, or Bar Date Order;

(s)     hear and determine all questions and disputes regarding title to the assets of any of the Debtor and its respective Estate;

(t)     hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Case; and

(u)     enter such orders as are necessary to implement and enforce any injunctions provide for in the Plan and Confirmation Order.

## XII.   Effect of Confirmation

### 12.01.  In General.

Upon and after the date of the Order Confirming Plan, the provisions of the Plan shall: (i) bind the Debtor and all creditors whether or not any Creditor is impaired under the Plan, or has accepted the Plan, or has voted on the Plan, or holds an Allowed Claim, or has otherwise participated in this Chapter 11 case or had actual notice of this Chapter 11 case and (ii) discharge all debts and Claims of the debtor pursuant to 11 U.S.C. §1141 and the provisions of this Plan; and (iii) to the extent permitted by law, bind all creditors to the terms hereof as a contract; and (iv) constitute res judicata with respect to any and all impairment of any claim treated or provided for or with respect to, the terms and provisions of this Plan.   This Plan shall be, upon confirmation, a contract by and among the Debtor and the creditors, enforceable in a Court of Law or equity having jurisdiction over the parties, as provided herein.

### 12.02.  Plan Injunction.

Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against the Debtor, the Estate, properties of the Estate or proceeds of said property are, with respect to any such Claims, specifically permanently enjoined and restrained from commencing, conducting or continuing any action or proceeding against the Debtor upon such Claims, including, but not limited to (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation) any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Estate, properties of the Estate or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons based upon such Claims; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against the Debtor, the Estate, properties of the Estate or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Estate, properties of the Estate or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the Estate, properties of the Estate or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, the foregoing Persons; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

### 12.03.  Discharge of Claims.

Confirmation of the Plan shall discharge and fully satisfy, pursuant to and so provided by 11 U.S.C. § 1141(d) of the Bankruptcy Code, and as provided contractually pursuant to the terms of the Plan, all Debts, liabilities, and obligations of the Debtor (including all penalties, fines or forfeitures, and damages) that arose before the Confirmation Date, except as otherwise specifically provided in the Plan or the Order Confirming Plan, whether or not such Claim is Allowed or paid pursuant to this Plan. Upon Confirmation, the Plan shall Discharge all Debts (as defined in 11 U.S.C. § 101) and all Claims against, and liabilities of, the Debtor which are Dischargeable by Debtor in a case under 11 U.S.C. §101, et seq. by statute or by law applicable to Title 11, U.S.C., and in a Chapter 11 Case, or by contract with a Creditor.  All Creditors and Persons will continue to be stayed and enjoined from proceeding against the Debtor and their assets pursuant to 11 U.S.C. § 524.  Upon Confirmation, title to all exempt assets of the Debtor shall be retained by and revested in the Debtor, free and clear of all claims, liens, security and equitable interests, except as specifically set forth in this Plan.   The Order Confirming Plan shall be a judicial determination of, and a contract for, the discharge of the liabilities of and Claims against the Debtor.

### 12.04.  Discharge of Debtor.

Whether or not a Creditor has filed a Claim, and whether or not a timely filed Claim is an Allowed Claim, the provisions for any consideration distributed, or to be distributed, under the Plan shall be in exchange for, and in complete satisfaction of, the discharge, and release of all Claims of any nature whatsoever against the Debtor or any of their assets or properties; except as otherwise provided herein, upon the Effective Date, the Debtor shall be deemed discharged and released to the extent permitted by 11 U.S.C. §1141 of the Bankruptcy Code and the provisions of this Plan from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(I) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan.  The Confirmation Order shall be a judicial determination of discharge of all liabilities of any and all of the Debtor.   As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or property of the Debtor to the extent it relates to a Claim discharged.

**IT IS THE INTENTION OF THIS PLAN THAT ONCE CONFIRMATION OCCURS, THE DEBTOR WILL BE FULLY, FINALLY, AND COMPLETELY DISCHARGED FROM ALL LIABILITIES INCLUDING CLAIMS AND DEBTS AND SHALL BE REVESTED WITH ALL PROPERTY OF THE ESTATE AS HEREIN PROVIDED.**

**12.05.  Exculpations.**

To the fullest extent permissible under all applicable law, the Debtor and its current officers, directors, members, managers, agents, representatives  for same shall neither have nor incur any liability to any entity including, specifically, any holder of a Claim or Interest for any act taken or admitted to be taken in connection with or related to the prosecution of this Chapter 11 Case, the formulation, preparation, dissemination, implementation, Confirmation or consummation of any Plan, any Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Chapter 11 Case, any settlement agreement, purchase offer (whether accepted or rejected), any Plan, any Disclosure Statement, or the Confirmation Order, including solicitation of acceptance of any Plan.

# XIII.   Miscellaneous Provisions

### 13.01.  Determination of Non-Enforceability of Any Material Provision of this Plan

Except to the extent that any provision of this Plan is declared unenforceable by Final Order with impairs, in any respect, the Discharge granted in this Plan, no provision of this Plan found by Final Order to be unenforceable shall impair the enforcement of any other provision of this Plan or the Discharge herein provided.   Notwithstanding any provision herein to the contrary, to the extent that any Final Order provides that any provision of this Plan shall impair the Discharge granted herein, provided.   Notwithstanding any provision herein to the contrary, to the extent that any Final Order provides that any provision of this Plan shall impair the Discharge granted herein, then at the sole written and timely election of the debtor, and only in such event, the Confirmation of this Plan shall be deemed revoked, and the Debtor shall have the right to propose and amended or modified Plan curing such unenforceable provision shall be filed within sixty (60) days of the entry of such Final Order.

### 13.02.  Compliance with Tax Requirements

In connection with the Plan, the Debtor shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities and all distributions hereunder shall be subject to such withholding and reporting requirements.  The federal income tax effects on holders of claims will vary depending on how the holder has treated its claim for tax purposes.  For example, if the holder has a basis in its debt claim and is paid an amount less than its basis, the holder may be entitled to a federal income tax deduction for its loss.   This will depend on the holder's own tax characteristics and cannot be assured.  Conversely, if the holder has no basis in its debt claim, the holder may recognize income for federal income tax purposes based on payments under

the plan.   Because each holder's federal income tax situation may vary, you are urged to consult your own tax advisors to determine the federal income tax effect of the plan on you.   The Debtor may also have a federal income tax effect from the plan.   To the extent that indebtedness is discharged, the Debtor may have a basis adjustment in its assets.   Moreover, any sale of assets may produce taxable income.   The forecasts set forth above incorporate the Debtor's best estimate of the federal income tax effect of the plan.

### 13.03.   Compliance with All Applicable Laws

If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Debtor shall comply with such law, rule, regulation, or order; provided that nothing contained herein shall require such compliance by the Debtor if where the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings by the Debtor, and, if appropriate, for which an adequate reserve has been set aside on the books of the Debtor.

### 13.04.   Setoffs

Subject to the limitations provided in section 553 of the Bankruptcy Code, the Debtor may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever the Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim that the Debtor may have against such holder.

### 13.05.   Recognition of Guarantee Rights

The classification of any manner of satisfying all Claims under the Plan take into consideration the fact that the Debtor may be a joint obligor with another Person or Persons with respect to the same obligation.   All Claims against the Debtor based upon any such guarantees or joint obligations shall be discharged in the manner provided in the Plan.

### 13.06.   Releases of Liens, Claims and Causes of Action

All Creditors of the Debtor receiving payment or distributions pursuant to the Plan in consideration for the promises and obligations of the debtor under the Plan, shall be deemed to have waived, released, discharged all rights or claims which they had or might have had against the debtor.

### 13.07.    Allowed Secured Claims

The lien securing any Allowed Secured Claim shall be deemed to be released and discharged in its entirety when the Allowed Secured Claim secured by such lien has been paid in full in accordance with the provisions of this Plan, and as may be limited by the provisions of this Plan.   Upon such payment in full, the holder of such Allowed Secured Claim shall execute and deliver such instruments as may be reasonably requested by the Debtor, in order to reflect such release and discharge on the appropriate land or public filing records.

### 13.08.    Release of Judgment Liens

The Order confirming the Plan shall constitute a release and discharge of all judgment liens against any Property, Creditor Asset, or asset of the Debtor or the Bankruptcy Estate.   A certified copy of the Confirmation Order, shall constitute a release of any such judgment lien, or, at its sole discretion, the debtor may demand and obtain from any judgment lien holder, at the cost and expense of the debtor, a release of such judgment lien in recordable form.   If after a reasonable request is made, any creditor who refuses or fails to execute said release, all costs (attorney's fees, filing fees, etc.) to enforce this process shall be born by the creditor who refused.

### 13.09.    Guarantees; Indemnities; Notes; Bonds; Etc.

All Claims and causes of action based upon guarantees of collection, payment or performance, indemnity or performance bonds, promissory notes, or other similar undertakings made or given by the debtor as to the obligations or performance of another or of any other person shall be discharged, released and of no further force and effect, except as otherwise provided in this Plan.

### 13.10.    Release Upon Payment and Discharge

All consideration and payments provided under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims, Debts, and liabilities of any nature whatsoever against the Debtor or any of their assets or properties effective on the Effective Date. Except as may be otherwise provided herein, at the Confirmation Date all Claims against the Debtor shall be satisfied, Discharged, and released in full; and all claimants, holders of Claims and all Creditors shall be precluded from asserting against the Debtor, their assets, properties, or interests held by it, any Claim or future Claim based upon any transaction arising on or prior to the Confirmation Date.   All creditors of the Debtor receiving payment or distributions pursuant to the Plan, in consideration for the promises and obligations of the Debtor under the Plan, shall be

deemed to have waived, released, and Discharged all rights or Claims which they had or might have had against the Debtor, except those expressly set out herein, unless otherwise ordered by this Court in the Confirmation Order.

### 13.11.   Authorization & Proponent

This Plan is proposed by the Debtor as Debtor in Possession in this Case for Confirmation by the Court pursuant to 11 U.S.C. §1121 and to the extent required to accomplish Confirmation, the Debtor as Debtor in Possession and proponent of this Plan, moves by filing and prosecution of the Confirmation of this Plan, to invoke the provisions of 11 U.S.C. §1129(b).   This Plan is filed in good faith as required by the Bankruptcy Code.  This Chapter 11 case has been filed and prosecuted in good faith.

### 13.12.   Payment – Prepayment.

Any claim may be prepaid at any time, without penalty.   Interest as provided in this plan must be paid through the date of prepayment.   Except for Ad Valorem Taxes, Distributions under the plan shall commence on the first of the month, following one full month after the Effective date.   Effective Date shall mean the Fifteenth (15th) day following the day of the entry of the Order confirming plan. Distribution under the Plan for Ad Valorem Taxes shall commence on the first of the month, following one full month after the Effective Date, however, such payments shall not exceed sixty months from the date of relief or bankruptcy filing date.

### 13.13.   Notices.

After the Confirmation Date, all notices required to be given under any provision of the Bankruptcy Code and/or Rules shall be sent by first class mail, postage prepaid, only to (a) the Debtor; (b) the counsel representing the  Debtor, (c) the United States in accordance with Bankruptcy Rule 2002(j), (d) the United States Trustee; and (e) those persons specifically requesting, pursuant to written request filed with the Court after the Confirmation Date, that they be furnished with notices.   Service of all notices, as provided herein, shall constitute full and complete service on all Creditors and parties-in-interest.

### 13.14.   Amendment or Modification To Plan

This Plan may be amended or modified by the Debtor prior to the hearing on confirmation without notice or hearing and without an additional Disclosure Statement pursuant to Section 1127(a) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 3019. Post-confirmation amendments or modifications of the Plan may be allowed by the Court under Section 1127(b) of the Bankruptcy Code if the proposed amendment or modification is offered before the Plan has been substantially consummated.   The sole right to amend or modify the Plan

at any time shall be reserved to the Debtor.   A holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

### 13.15.   Disbursing Agent.

The Debtor shall act as disbursing agent under the Plan.

### 13.16.   Severability of Plan Provisions.

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.   The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.17.   Successors & Assigns.

This Plan shall be binding upon and inure to the benefit of the Debtor, and its respective successors and assigns, including without limitation, the Debtor. The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of , any heir, executor, administrator, successor, or assign of such entity.

### 13.18.   Governing Law.

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed in accordance with, the laws of the State of Texas without giving effect to the principles of conflicts of law of such jurisdiction.


Dated:   December 30, 2014

                                        Respectfully submitted,

S & M Transport, LLC.

By:    */s/ Esequiel Silva*
       Esequiel Silva
       Its Managing Member

of Counsel:
Malaise Law Firm

Eduardo V. Rodriguez
State Bar No. 00795621
Federal I.D. No. 19945
1265 N. Expressway 83
Brownsville, Texas 78521
Tel. 956-547-9638
Fax. 956-547-9630
email (evr@malaiselawfirm.com)
Counsel for Debtor

Financial Projections

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| | | Comments | 2015 | 2016 | 2017 | 2018 | 2019 | Total |
| 1 | | | | | | | | |
| 2 | Bank Balance & Carry Over From Prior Year | | $ 150,000.00 | $ 52,215.79 | $ 40,747.58 | $ 45,587.37 | $ 50,427.16 | $ 150,000.00 |
| 3 | | | | | | | | |
| 4 | INCOME | | | | | | | |
| 5 | | | | | | | | |
| 6 | Trucking Revenue | | $ 6,360,000.00 | $ 6,360,000.00 | $ 6,360,000.00 | $ 6,360,000.00 | $ 6,360,000.00 | $ 31,800,000.00 |
| 7 | | | $ - | $ - | $ - | $ - | $ - | $ - |
| 8 | | | | | | | | $ - |
| 9 | TOTAL INCOME | | $ 6,360,000.00 | $ 6,400,000.00 | $ 6,400,000.00 | $ 6,400,000.00 | $ 6,400,000.00 | $ 31,960,000.00 |
| 10 | | | | | | | | $ - |
| 11 | DIRECT EXPENSES | | | | | | | $ - |
| 12 | | | | | | | | $ - |
| 13 | Property Tax | | $ 21,000.00 | $ 21,000.00 | $ 21,000.00 | $ 21,000.00 | $ 21,000.00 | $ 105,000.00 |
| 14 | Property Insurance | | $ 2,481.00 | $ 2,481.00 | $ 2,481.00 | $ 2,481.00 | $ 2,481.00 | $ 12,405.00 |
| 15 | Key Life Insurance | | $ 1,992.00 | $ 1,992.00 | $ 1,992.00 | $ 1,992.00 | $ 1,992.00 | $ 9,960.00 |
| 16 | Property Maintenance | | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 15,000.00 |
| 17 | Utilities | | $ 8,700.00 | $ 8,700.00 | $ 8,700.00 | $ 8,700.00 | $ 8,700.00 | $ 43,500.00 |
| 18 | | | | | | | | $ - |
| 19 | SUBTOTAL (DIRECT EXPENSES) | | $ 37,173.00 | $ 37,173.00 | $ 37,173.00 | $ 37,173.00 | $ 37,173.00 | $ 185,865.00 |
| 20 | | | | | | | | $ - |
| 21 | G&A EXPENSES | | | | | | | $ - |
| 22 | | | | | | | | $ - |
| 23 | Malaise Law Firm | | $ 30,000.00 | $ - | $ - | $ - | $ - | $ 30,000.00 |
| 24 | Hales Bradford- Accountant | | $ 22,880.00 | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 | $ 70,880.00 |
| 25 | Advertising | | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 40,000.00 |
| 26 | Bank Fees | | $ 6,568.00 | $ 6,568.00 | $ 6,568.00 | $ 6,568.00 | $ 6,568.00 | $ 32,840.00 |
| 27 | Dues & Subscriptions | | $ 8,160.00 | $ 8,160.00 | $ 8,160.00 | $ 8,160.00 | $ 8,160.00 | $ 40,800.00 |
| 28 | Employee Benefits | | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 5,000.00 |
| 29 | Insurance - Owners, health | | $ - | $ - | $ - | $ - | $ - | $ - |
| 30 | Meals & Entertainment | | $ 4,782.00 | $ 4,782.00 | $ 4,782.00 | $ 4,782.00 | $ 4,782.00 | $ 23,910.00 |
| 31 | Payroll - Administrative | | $ 98,500.00 | $ 98,500.00 | $ 98,500.00 | $ 98,500.00 | $ 98,500.00 | $ 492,500.00 |
| 32 | Payroll Taxes - Administrative | | $ 8,423.00 | $ 8,423.00 | $ 8,423.00 | $ 8,423.00 | $ 8,423.00 | $ 42,115.00 |
| 33 | Copier Lease | | $ 7,236.00 | $ 7,236.00 | $ 7,236.00 | $ 7,236.00 | $ 7,236.00 | $ 36,180.00 |
| 34 | Penalties & Fines | | $ 7,200.00 | $ 7,200.00 | $ 7,200.00 | $ 7,200.00 | $ 7,200.00 | $ 36,000.00 |
| 35 | Postage | | $ 1,943.00 | $ 1,943.00 | $ 1,943.00 | $ 1,943.00 | $ 1,943.00 | $ 9,715.00 |
| 36 | Repairs & Maintenance | | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 10,000.00 |
| 37 | Supplies | | $ 16,428.00 | $ 16,428.00 | $ 16,428.00 | $ 16,428.00 | $ 16,428.00 | $ 82,140.00 |
| 38 | Taxes - Franchise | | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 | $ 60,000.00 |
| 39 | Telephone | | $ 12,593.00 | $ 12,593.00 | $ 12,593.00 | $ 12,593.00 | $ 12,593.00 | $ 62,965.00 |
| 40 | Travel | | $ 11,282.00 | $ 11,282.00 | $ 11,282.00 | $ 11,282.00 | $ 11,282.00 | $ 56,410.00 |
| 41 | Uniforms | | $ 990.00 | $ 990.00 | $ 990.00 | $ 990.00 | $ 990.00 | $ 4,950.00 |
| 42 | Owner Distribution | | $ 212,000.00 | $ 212,000.00 | $ 212,000.00 | $ 212,000.00 | $ 212,000.00 | $ 1,060,000.00 |
| 43 | Emergency Fund | | $ 18,000.00 | $ 18,000.00 | $ 18,000.00 | $ 18,000.00 | $ 18,000.00 | $ 90,000.00 |

EXHIBIT #1                    1 of 3

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 1 | | Comments | 2015 | 2016 | 2017 | 2018 | 2019 | Total |
| 44 | | | | | | | | |
| 45 | **Sub Total G & A Expenses** | | | | | | | |
| 46 | | | | | | | | |
| 47 | **COST OF REVENUE** | | | | | | | |
| 48 | Freight | | $ 2,220.00 | $ 2,220.00 | $ 2,220.00 | $ 2,220.00 | $ 2,220.00 | $ 11,100.00 |
| 49 | Fuel | | $ 2,880,000.00 | $ 2,880,000.00 | $ 2,880,000.00 | $ 2,880,000.00 | $ 2,880,000.00 | $ 14,400,000.00 |
| 50 | Highway Taxes | | $ 36,410.00 | $ 36,410.00 | $ 36,410.00 | $ 36,410.00 | $ 36,410.00 | $ 182,050.00 |
| 51 | Insurance - Tractors/Trailers | | $ 295,000.00 | $ 295,000.00 | $ 295,000.00 | $ 295,000.00 | $ 295,000.00 | $ 1,475,000.00 |
| 52 | License & Permits | | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | $ 120,000.00 |
| 53 | Payroll - Drivers/Mechanics | | $ 992,744.00 | $ 992,744.00 | $ 992,744.00 | $ 992,744.00 | $ 992,744.00 | $ 4,963,720.00 |
| 54 | Payroll - Taxes | | $ 85,901.00 | $ 85,901.00 | $ 85,901.00 | $ 85,901.00 | $ 85,901.00 | $ 429,505.00 |
| 55 | Per diem | | $ 381,560.00 | $ 381,560.00 | $ 381,560.00 | $ 381,560.00 | $ 381,560.00 | $ 1,907,800.00 |
| 56 | Repairs & Maintenance | | $ 352,656.00 | $ 352,656.00 | $ 352,656.00 | $ 352,656.00 | $ 352,656.00 | $ 1,763,280.00 |
| 57 | Scale & Toll fees | | $ 19,732.00 | $ 19,732.00 | $ 19,732.00 | $ 19,732.00 | $ 19,732.00 | $ 98,660.00 |
| 58 | License Plate Renewals | | $ 37,091.00 | $ 37,091.00 | $ 37,091.00 | $ 37,091.00 | $ 37,091.00 | $ 185,455.00 |
| 59 | Wells Fargo Equip. Lease #445 | | $ 21,744.00 | $ 16,308.00 | - | - | - | $ 38,052.00 |
| 60 | Wells Fargo Equip. Lease #448 | | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 50,000.00 |
| 61 | Express Employment Professionals | | $ - | $ - | $ - | $ - | $ - | $ - |
| 62 | Zeke Silva Truck Lot Lease | | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | $ 120,000.00 |
| 63 | Tires | | $ 156,000.00 | $ 156,000.00 | $ 156,000.00 | $ 156,000.00 | $ 156,000.00 | $ 780,000.00 |
| 64 | | | | | | | | $ - |
| 65 | **Subtotal (Cost of Revenue)** | | $ 5,809,043.00 | $ 5,762,727.00 | $ 5,746,419.00 | $ 5,746,419.00 | $ 5,746,419.00 | $ 28,811,027.00 |
| 66 | | | | | | | | |
| 67 | | | | | | | | |
| 68 | **NET INCOME AVAILABLE FOR PLAN** | | $ 663,784.00 | $ 652,315.79 | $ 657,155.58 | $ 661,995.37 | $ 666,835.16 | $ 3,302,085.90 |
| 69 | | | | | | | | |
| 70 | **CHAPTER 11 PAYMENT PLAN** | | | | | | | |
| 71 | | | | | | | | |
| 72 | **PRIORTY CREDITORS** | | | | | | | |
| 73 | | | | | | | | |
| 74 | Class 3 - Internal Revenue Service - 3% (Payments commenced Nov 1, 2014) | $ 58,840.09 | 12,121.06 | 12,121.06 | 12,121.06 | 12,121.06 | 12,121.06 | $ 60,605.29 |
| 75 | | | | | | | | |
| 76 | **SECURED CREDITORS** | | | | | | | |
| 77 | | | | | | | | |
| 78 | Class 4 - Cameron County Tax Officce - 12% - 60 Months calculated from October 15, 2014 | $ 34,621.13 | $ 7,755.13 | $ 7,755.13 | $ 7,755.13 | $ 7,755.13 | $ 7,755.13 | $ 38,775.67 |
| 79 | Class 5 - G. E. Capital - 5.25% | $ 743,985.67 | $ 156,608.98 | $ 156,608.98 | $ 156,608.98 | $ 156,608.98 | $ 156,608.98 | $ 783,044.92 |
| 80 | Class 6 - J. P. Morgan Chase - 5.25% | $ 968,500.00 | $ 203,869.25 | $ 203,869.25 | $ 203,869.25 | $ 203,869.25 | $ 203,869.25 | $ 1,019,346.25 |
| 81 | Class 7 - Plains Capital Bank - 6% (unimpaired) | $ 134,015.04 | $ 28,411.19 | $ 28,411.19 | $ 28,411.19 | $ 28,411.19 | $ 28,411.19 | $ 142,055.94 |

EXHIBIT #1     2 of 3

Financial Projections

|   | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 1 |  | Comments | 2015 | 2016 | 2017 | 2018 | 2019 | Total |
| 82 | Class 8 - Prosperity Bank - 5.25% | $ 47,800.00 | $ 10,061.90 | $ 10,061.90 | $ 10,061.90 | $ 10,061.90 | $ 10,061.90 | $ 50,309.50 |
| 83 | Class 9 - Volvo Financial Services - 5.25% | $ 497,935.00 | $ 104,815.32 | $ 104,815.32 | $ 104,815.32 | $ 104,815.32 | $ 104,815.32 | $ 524,076.59 |
| 84 | Class 10 - Wells Fargo - 5.25% | $ 48,250.00 | $ 10,156.63 | $ 10,156.63 | $ 10,156.63 | $ 10,156.63 | $ 10,156.63 | $ 50,783.13 |
| 85 |  |  |  |  |  |  |  | $ - |
| 86 | **SUBTOTAL (SECURED CREDITORS)** | **$ 2,475,106.84** | **$ 521,678.40** | **$ 521,678.40** | **$ 521,678.40** | **$ 521,678.40** | **$ 521,678.40** | **$ 2,608,391.99** |
| 87 |  |  |  |  |  |  |  |  |
| 88 | **UNSECURED CREDITORS** |  |  |  |  |  |  |  |
| 89 | Class 11 - Genral Unsecured Claims - 51% of Claim 0% interest |  |  |  |  |  |  |  |
| 90 | G. E. Capital - undersecured portion | $ 142,759.95 | $ 14,561.51 | $ 14,561.51 | $ 14,561.51 | $ 14,561.51 | $ 14,561.51 | $ 72,807.55 |
| 91 | J.P. Morgan Chase Bank - undersecured portion | $ 258,648.75 | $ 26,382.17 | $ 26,382.17 | $ 26,382.17 | $ 26,382.17 | $ 26,382.17 | $ 131,910.85 |
| 92 | Prosperity Bank - undersecured portion | $ 4,417.49 | $ 450.58 | $ 450.58 | $ 450.58 | $ 450.58 | $ 450.58 | $ 2,252.90 |
| 93 | Volvo Financial Services - undersecured portion | $ 127,829.41 | $ 13,038.60 | $ 13,038.60 | $ 13,038.60 | $ 13,038.60 | $ 13,038.60 | $ 65,193.00 |
| 94 | Wells Fargo - undersecured portion | $ 6,017.49 | $ 613.78 | $ 613.78 | $ 613.78 | $ 613.78 | $ 613.78 | $ 3,068.90 |
| 95 | Compass Bank | $ 7,018.78 | $ 715.92 | $ 715.92 | $ 715.92 | $ 715.92 | $ 715.92 | $ 3,579.58 |
| 96 | All Valley Drug Screen | $ 1,275.00 | $ 130.05 | $ 130.05 | $ 130.05 | $ 130.05 | $ 130.05 | $ 650.25 |
| 97 | Arguindegui Oil Co, Ltd | $ 80,000.00 | $ 8,160.00 | $ 8,160.00 | $ 8,160.00 | $ 8,160.00 | $ 8,160.00 | $ 40,800.00 |
| 98 | Bank Card Services | $ 1,118.98 | $ 114.14 | $ 114.14 | $ 114.14 | $ 114.14 | $ 114.14 | $ 570.68 |
| 99 | Bank of America Business Card | $ 5,316.94 | $ 542.33 | $ 542.33 | $ 542.33 | $ 542.33 | $ 542.33 | $ 2,711.64 |
| 100 | BBVA Compass | $ 25,000.00 | $ 2,550.00 | $ 2,550.00 | $ 2,550.00 | $ 2,550.00 | $ 2,550.00 | $ 12,750.00 |
| 101 | Chase Ink | $ 25,000.00 | $ 2,550.00 | $ 2,550.00 | $ 2,550.00 | $ 2,550.00 | $ 2,550.00 | $ 12,750.00 |
| 102 | CTI Technology Financing (Dahill) | $ 2,784.28 | $ 284.00 | $ 284.00 | $ 284.00 | $ 284.00 | $ 284.00 | $ 1,420.00 |
| 103 | North American Transaction Services | $ 4,000.00 | $ 408.00 | $ 408.00 | $ 408.00 | $ 408.00 | $ 408.00 | $ 2,040.00 |
| 104 | Octagon Tire Holdings, Inc. | $ 11,533.60 | $ 1,176.43 | $ 1,176.43 | $ 1,176.43 | $ 1,176.43 | $ 1,176.43 | $ 5,882.14 |
| 105 | Southern Tire Mart, LLC. | $ 25,346.96 | $ 2,585.39 | $ 2,585.39 | $ 2,585.39 | $ 2,585.39 | $ 2,585.39 | $ 12,926.95 |
| 106 | Superior Financial Group | $ 2,000.00 | $ 204.00 | $ 204.00 | $ 204.00 | $ 204.00 | $ 204.00 | $ 1,020.00 |
| 107 | Valley Truck Centers, Inc. | $ 32,371.25 | $ 3,301.87 | $ 3,301.87 | $ 3,301.87 | $ 3,301.87 | $ 3,301.87 | $ 16,509.34 |
| 108 |  |  |  |  |  |  |  | $ - |
| 109 | **SUBTOTAL (UNSECURED CREDITORS)** | **$ 762,438.88** | **$ 77,768.75** | **$ 77,768.75** | **$ 77,768.75** | **$ 77,768.75** | **$ 77,768.75** | **388,843.77** |
| 110 |  |  |  |  |  |  |  | $ - |
| 111 | **GRAND TOTAL (CH 11 PAYMENT PLAN)** |  | **$ 6,457,784.21** | **$ 6,411,468.21** | **$ 6,395,160.21** | **$ 6,395,160.21** | **$ 6,395,160.21** | **32,054,733.05** |
| 112 | **DIP ACCOUNT ENDING BALANCE** |  | **$ 52,215.79** | **$ 40,747.58** | **$ 45,587.37** | **$ 50,427.16** | **$ 55,266.95** | **55,266.95** |
| 113 |  |  |  |  |  |  |  |  |

EXHIBIT #1      3 of 3